### HOOSIER FACTORIES, Inc. v. UNITED STATES.

No. 49910.

United States Court of Claims.

May 6, 1952.

544

Leo J. Schwartz, Chicago, Ill., for plaintiff.

J. W. Hussey, Washington, D. C., with whom. was Acting Asst. Atty. Gen., Ellis N. Slack (Andrew D. Sharpe, Washington, D. C., on the brief), for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

MADDEN, Judge.

The plaintiff, an Indiana corporation, was required to pay and did pay more taxes under Section 102 of the Internal Revenue Code, 26 U.S.C.A. § 102, for its fiscal years ending October 31, 1944, and October 31, 1946, than it says were owing. It also paid substantial sums of interest because it was late in paying the taxes. It sues to recover the asserted excess payments and interest, together with statutory interest on the asserted overpayments.

Section 102 of the Internal Revenue Code imposes a surtax on corporations which improperly accumulate surplus instead of paying it out in dividends to shareholders in whose hands it could be taxed as ordinary income. Section 102(d) (1) defines the income to which the Section 102 tax is applicable. In general it is the corporation's ordinary income minus the sum of (1) federal income taxes, (2). disallowed charitable contributions, (3) disallowed losses and (4) income subject to excess profits tax.

It is the fact that the plaintiff filed its tax returns on a fiscal, rather than a calendar, year basis that gives rise to our problem. When a taxpayer makes his returns on a calendar year basis, and Congress changes the tax law or the tax rates, and makes the change effective as of January 1st, the taxpayer's income for the calendar year is, of course, all subject to the prescribed tax for that year. But for the taxpayer who makes his returns on a fiscal year basis, for example, a year beginning November 1 and ending on October 31 of the following year, as in the instant case, there is the problem as to whether the tax rates for the first of the two calendar years should apply, or those for the second, or those for the year in which the greater part of the taxpayer's fiscal year is included, or whether two computations should be made, one as if all the income had been earned in the first year, the other as if it had all been earned in the second, and then that ratio of each computation should be taken which the number of days of the taxpayer's fiscal year which elapsed in each calendar year bore to the 365 days of the calendar year, the sum of the two answers being the tax for the fiscal year. The last described method of computation is known as the dual method.

Most of the Revenue Acts prior to 1934 were made effective on a calendar year basis, hence a difference in rates in two successive years required a dual computation for a fiscal year taxpayer. But in the Revenue Act of 1934 it was provided that it should be applicable to taxable years *beginning after* December 31, 1933. Section 1, 26 U.S.C.A.Int.Rev.Acts, page 664. That meant that a taxpayer such as the plaintiff, with a fiscal year beginning November 1 and ending October 31, would not be covered by the new rates until ten months later than a calendar year taxpayer would. If the new law increased the rates, the delay would be to the fiscal year taxpayer's advantage and, of course, *vice versa*. The high rates proposed to be fixed in the Revenue Act of 1942 naturally suggested that fiscal year taxpayers should

not escape the new high rates for a part of the time that calendar year taxpayers were paying them, as they would have done under the system of the 1934 Act. For that reason, Section 140 of the Revenue Act of 1942, which became Section 108 of the Internal Revenue Code, 26 U.S.C.A. § 108, was enacted. That Section said:

"§ 108. Fiscal year taxpayers

"(a) Taxable years beginning in 1941 and ending after June 30, 1942. In the case of a taxable year beginning in 1941 and ending after June 30, 1942, the tax imposed by sections 11, 12, 13, 14, and 15 shall be  *  *  *."

The section then went on to prescribe the dual method of computation, as described above, for corporations and individuals. As amended in subsequent years Section 108 made similar provisions for taxable years beginning in 1943 and ending in 1944, 26 U.S.C.A. § 108(b), and for taxable years beginning in 1945 and ending in 1946, 26 U.S.C.A. § 108(c). In the amendment relating to the years 1943 and 1944, Section 450 was listed along with Sections 11, 12, 13, 14, and 15. In the amendment relating to the years 1945 and 1946, Section 400 was so listed. The references to Sections 450 and 400 seem not to be relevant to our problem.

The Acts here involved prescribe dual computation for "the tax imposed by Sections 11, 12, 13, 14, and 15." Sections 11 and 12 impose normal taxes and surtaxes, respectively, on individuals. Sections 13, 14, and 15 impose normal taxes on corporations in general, normal taxes on corporations with net income of not more than $25,000, and surtaxes on corporations, respectively. The plaintiff's contention is that, since Section 108 prescribed the dual computation of the taxes imposed on corporations by Sections 13, 14, and 15, it left the tax imposed by Section 102 to the normal operation of the statutes, i. e., that its Section 102 liability for its fiscal years beginning in 1943 and 1945 should be computed in accordance with that section as applicable to taxable years beginning prior to January 1, 1944, and January 1, 1946, respectively.

If the plaintiff's contention is correct, its Section 102 tax for its fiscal year beginning in 1943 and ending in 1944 should all have been computed at the 1943 rate, which was lower than the 1944 rate. The difference was $1,145.21. Similarly, for its fiscal year beginning in 1945 and ending in 1946, the plaintiff's contention is that its Section 102 tax should all have been computed, under the law as it was prior to January 1, 1946. For the 1945–46 year the difference is very large for the following reason. As we said at the beginning of this opinion, the definition of what corporate income shall be subject to the Section 102 tax on undistributed surplus prescribes that among other things, the corporation's income subject to excess profits tax should be deducted from the corporation's otherwise taxable income. The plaintiff, in its fiscal taxable year November 1, 1945, to October 31, 1946, had a large income which was, in a sense, subject to excess profits tax. Deducting this amount, together with its other deductions, from its net income, left less than nothing, and hence no Section 102 net income to tax. We have said that this income was "in a sense" subject to excess profits tax because the Revenue Act of 1945, in Section 131, inserted into the Code Section 710(a) (7), 26 U.S.C.A. § 710(a) (7) which provided that the excess profits tax for a fiscal year beginning in 1945 and ending in 1946 should be only that proportion of a full year's tax which the number of days in the fiscal year which were in the year 1945 bore to a full year. Section 122 of the 1945 Act repealed the excess profits tax as of December 31, 1945, except, as shown above, for fiscal year taxpayers whose years began before that date. The plaintiff, then, had to pay an excess profits tax on its 1945–46 fiscal year income, and it therefore had an income subject to excess profits tax. But its tax was only two-twelfths of a full year's excess profits tax because of the provision of Section 710(a) (7) which was intended to treat fiscal year taxpayers substantially the same as calendar year taxpayers, as to whom the excess profits tax law had been repealed as of December 31, 1945. Having

# 546

had an income subject to excess profits tax, the plaintiff says that, under Section 102 (d) (1) it had the right to deduct it in determining its Section 102 net income, and regardless of how much or how little excess profits tax it was, in fact, required to pay.

The Commissioner of Internal Revenue, on the other hand, as shown in Finding 11, made a dual computation of the plaintiff's Section 102 tax. His computation of the 1945 part of the tax was the same as the plaintiff computes it for the whole year, and showed no tax. But for the 1946 part of the fiscal year, the Commissioner found no income subject to excess profits tax, and thus deprived the plaintiff of its principal deduction. The result was a Section 102 tax of $76,430.68.

█ If Section 108 of the Internal Revenue Code, as amended by the Revenue Acts of 1943 and 1945, was applicable to Section 102 taxes, the Commissioner's computation was, of course, correct. We have come to the conclusion that Section 108 was not applicable. It speaks, so far as corporations are concerned, of the taxes imposed by Sections 13, 14, and 15. The taxes here in question were imposed by Section 102. That section provides for the imposition of a tax on certain corporations "in addition to the other taxes imposed by this chapter". Thus the Section 102 tax is quite independent and is of comparable status with the taxes imposed by Sections 13, 14, and 15. If Congress had intended that the dual computation required by Section 108 should apply to Section 102 taxes, it would, presumably, have mentioned them along with the others.

█ The legislative history of Section 108 is not very conclusive, but it does not contradict the literal meaning of the language of the section. It was introduced in the House of Representatives in the 77th Congress as Section 129 of H.R. 7378. It was intended to set up a permanent rule for all taxable years, making the dual method of computation applicable to taxes "under this chapter." Section 102 was "in this chapter," Chapter I of the Code. But in a subsequent part of the proposed

Section 129, Section 102 taxes were expressly excepted from the dual computation requirement. The Senate bill, which with slight changes became the Revenue Act of 1942, struck out the reference to "the tax under this chapter" and said instead "the tax imposed by Sections 11, 12, 13, 14, and 15." The report of the Senate Committee on Finance stated, with respect to Section 141 of the Senate bill, which became Section 108 of the Code "This section relates to the normal tax imposed by Sections 11, 13, and 14 and to the surtax imposed by Sections 12 and 15." 1942-2 Cum.Bull. ·587. The Senate's reference only to specific sections instead of to "the tax under this chapter" made unnecessary and would have made redundant the express exception of the Section 102 tax from the dual computation system, which express exception the House bill had contained.

█ We have then, a situation in which Congress, probably by intention, and certainly by the language which it enacted, omitted Section 102 taxes from the dual computation system. Unquestionably the House Ways and Means Committee and the House itself intended to do so when H.R. 7378 was reported to and passed by the House. We do not know why it was thought wise to do so. When the unusual situation developed in the 1945 legislation, that the excess profits tax was being, in effect, repealed as of December 31, 1945, if Congress had had in mind that fiscal year taxpayers whose years began before but extended beyond that date could, under Section 102, subtract their "income subject to excess-profits tax" in determining their Section 102 taxable income it would probably have limited the amount to be subtracted to that proportion of their "income subject to excess profits tax upon which, in fact, they paid excess profits tax." By not doing to, Congress left a considerable loophole in Section 102 for the year 1946. We may not, by decision, amend the statute to close that loophole.

For its fiscal year 1944 the plaintiff paid, in excess of what it owed, $1,145.21 principal and $318.05 interest. For its fiscal year 1946, the plaintiff paid, in excess of

what it owed, $76,430.68 of principal and $11,383.98 of interest. It is entitled to recover all of these sums.

The plaintiff may have a judgment for $89,277.92, together with interest as provided by law.

It is so ordered.

HOWELL and LITTLETON, JJ., concur.

JONES, Chief Judge (dissenting in part).

I concur with the majority in holding that section 108 is not applicable to the tax imposed by section 102.

I dissent, however, from the conclusion that plaintiff is entitled to an excess profits income deduction in determining "section 102 net income", based on his total 1945–1946 fiscal year income. I cannot agree that "income subject to excess-profits tax" means anything more than "income *in fact* subject to excess profits .tax".

The manifest purpose of Congress in creating the excess profits income deduction in section 102(d) (1) (D) was to prevent taxation by section 102 of the same income which it had already subjected to excess profits tax under section 710. Section 102 (d) (1) (D) provided for a deduction of "income subject to excess-profits tax", here equivalent to "adjusted excess profits net income", in determining section 102 net income. In determining the amount of the deduction reference was made ultimately to section 710, which imposed the excess profits tax, and which provided, *inter alia,* as follows: "adjusted excess profits net income * * * means the excess profits net income (as defined in section 711)" less certain specific exemptions. Section 710(b).

For calendar year taxpayers, however, Congress repealed the excess profits tax levied by section 710, effective December 31, 1945. Section 122 of the Revenue Act of 1945. It then sought to restore equality of tax treatment to fiscal year taxpayers whose fiscal year began in 1945 and ended in 1946, i. e., no excess profits tax was to be levied for calendar year taxpayers beginning January 1, 1946, and an equivalent

treatment was to be afforded fiscal year taxpayers. Congress sought to achieve this result by a formula set up in section 710 (a) (7), as follows:

"(7) Taxable years beginning in 1945 and ending in 1946. In the case of a taxable year beginning in 1945 and ending in 1946, the tax shall be an amount equal to that portion of a tentative tax, computed as if the law applicable to taxable years beginning on January 1, 1945, were applicable to such taxable year, which the number of days in such taxable year prior to January 1, 1946, bears to the total number of days in such taxable year."

The repeal of the excess profits tax also had the effect of abolishing the excess profits income deduction provided in section 102 (d) (1) (D) as to calendar year taxpayers for the year 1946. This of course was entirely consistent with the purpose of section 102 to prevent double taxation.

But the plaintiff here argues that that repeal did not preclude fiscal year taxpayers from including the 1946 portion of their income in figuring their excess profits income deduction for the 1945–1946 fiscal year section 102 tax. In other words plaintiff is claiming an excess profits deduction based on a 12 month period while paying an excess profits tax based on only a two month period. Under plaintiff's contention fiscal year taxpayers would receive a very considerable advantage over calendar year taxpayers solely by virtue of a provision which sought merely to restore fiscal year taxpayers to a position of equality with calendar year taxpayers. But not only would plaintiff's contention result in a discriminatory deduction, it would also result in a disregard of the tax structure which Congress sought to. establish in section 102.

The tax deduction provided in section 102 was granted only because of the existence of the tax imposed by section 710, and it must necessarily be construed with reference to that tax. It is clear that the underlying effect of section 710(a) (7) was to tax plaintiff only on the 1945 portion of

his full 1945–1946 fiscal year income. The formula set up by section 710(a) (7) involved the computation of a "tentative tax" from the full 12 month adjusted excess profits net income. This tentative tax was then reduced by a fraction depending on the proportion that the 1945 period of the 1945–1946 fiscal year bore to the full year, in order to arrive at the actual excess profits tax. The formula could with equal logic have applied that fraction to the 12 month adjusted excess profits net income. I cannot see that Congress intended by the particular juxtaposition of the factors in the section 710(a) (7) formula to so warp the structure it had established in section 102 as to allow the excess profits deduction to be based on a 12 month period, while assessing the excess profits tax based on a two month period. For that matter, within the meaning of the section 102 deduction, the full 12 month adjusted excess profits net income was just as *tentative* as the so-called tentative tax figured in the section 710(a) (7) formula. The actual deduction under section 102 should have been determined upon the same basis as the actual tax for which the deduction was created.

We must bear in mind the purpose of the section 102 deduction to prevent taxation by section 102 of the same income as was taxed by section 710, and also the intent of section 710(a) (7) to treat fiscal year taxpayers substantially the same as those as to whom the excess profits tax had been repealed as of December 31, 1945, and who therefore had no adjusted excess profits net income upon which to claim a section 102 deduction for 1946. Looking then at the substance of the law it seems to me that plaintiff's contention should be rejected, since (1) it would not merely prevent double taxation but would instead permit an amount equivalent to the 1946 portion of the income to escape completely taxation under either section 102 or section 710, and (2) it would not merely restore equality of treatment to fiscal year

taxpayers, but would in effect give fiscal year taxpayers a discriminatory advantage of considerable proportion over their calendar year counterparts.

While it is true that "in a sense" the adjusted excess profits net income within the meaning of section 710(a) (7) was based on the full 1945–1946 fiscal year income, that was only in a very tentative sense, and not at all in the sense intended by section 102. I would not allow the purely mechanical interpretation of sections 102 and 710 advanced by plaintiff to circumvent the substance and purpose of those sections. All of the applicable provisions of the Code should be construed in their entirety, and not as individual isolated sections. When so considered the general design and purpose becomes manifest.

Congress intended in section 102 to allow a deduction for that income upon which the excess profits tax was based; in section 710(a) (7) the excess profits tax was based on the 1945 portion of the 1945–1946 fiscal year income; and I would therefore hold that plaintiff's section 102 excess profits deduction should likewise be based on the 1945 portion of his 1945–1946 fiscal year income.

Plaintiff's excess profits income deduction under section 102(d) (1) (D) for his 1945–1946 section 102 tax should therefore be limited to two-twelfths of his full 12 month adjusted excess profits net income, which is the same ratio as the actual two month period in 1945 upon which his excess profits tax is based bears to the full 1945–1946 fiscal year. Plaintiff's recovery for any overpayments on his 1945–1946 tax liability should be limited accordingly.[1]

I concur in full with the majority with respect to recovery by plaintiff for the fiscal year 1943–1944.

WHITAKER, J., concurs in the foregoing opinion.

---

1. Calculated on this basis the plaintiff's recovery on this item would be slightly more than $2,000, plus interest as provided by law.